IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAMELA HELLMANN and DAN          )
HELLMANN,                        )
          Plaintiffs,            )
                                 )
     v.                          )    Civil Action No. 07-1373
                                 )
SCOTT KERCHER, individually      )
and in his official capacity     )
as a Law Enforcement Officer     )
ROSSLYN FARMS BOROUGH, LARRY     )
FISCHIO, in his official         )
capacity as Chief of Police      )
of the ROSSLYN FARMS POLICE      )
DEPARTMENT, the ROSSLYN FARMS    )
POLICE DEPARTMENT, and the       )
BOROUGH OF ROSSLYN FARMS,        )
          Defendants.            )

MEMORANDUM and ORDER

Gary L. Lancaster
District Judge.                                   March 6, 2009

          This is a civil rights case.  Plaintiffs bring this

action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983

("section 1983") and Article I, § 26 of the Pennsylvania

Constitution [doc. no. 68].  Plaintiffs allege that defendant Scott

Kercher, a police officer employed by defendant Rosslyn Farms

Police Department, used excessive force when he arrested plaintiff

Pamela Hellman during a traffic stop on April 14, 2007.  Plaintiffs

allege that defendants Borough of Rosslyn Farms, the Rosslyn Farms

Police Department, and Chief of Police Larry Fischio (collectively,

"the municipal defendants") violated Ms. Hellmann's civil rights

by, inter alia, having a custom or policy of permitting their

police officers to use excessive force when making an arrest. Additionally, plaintiffs allege various state law claims against defendants.

Pending before the court are three motions for summary judgment pursuant to Fed.R.Civ.P. 56(c): (1) defendant Kercher's motion for partial summary judgment [doc. no. 103]; (2) the municipal defendants' motion for summary judgment [doc. no. 108]; and (3) plaintiffs' motion for partial summary judgment against the municipal defendants [doc. no. 106]. For the reasons set forth below, defendant Kercher's motion will be granted in part and denied in part; the municipal defendants' motion will be granted; and plaintiffs' motion will be denied.

I.   BACKGROUND

Unless otherwise indicated, the facts set forth below are undisputed.

A.   April 14, 2007 Arrest Of Plaintiff

At approximately 11:00 p.m. on April 14, 2007, plaintiff Pamela Hellmann drove from Interstate 279 into the Borough of Rosslyn Farms. Defendant Kercher, a Rosslyn Farms police officer, was on duty at the time. According to defendant Kercher, Ms. Hellmann failed to stop at a stop sign when she exited the off-ramp and entered Rosslyn Farms.[1]   Defendant Kercher activated his

_____

[1] Ms. Hellmann contends that she did stop at the stop sign.

2

emergency lights and Ms. Hellmann pulled her car over to the side of the road.

During the stop, defendant Kercher asked Ms. Hellmann to exit her vehicle. Ms. Hellmann got out of her vehicle, then performed an unsolicited cartwheel on the road. At that point, defendant Kercher advised Ms. Hellmann that she was under arrest. The parties dispute the details of what occurred thereafter, but agree that Ms. Hellmann and defendant Kercher struggled and fell to the ground while defendant Kercher tried to handcuff Ms. Hellmann.

As a result of the struggle with defendant Kercher, Ms. Hellmann claims to have sustained various personal bodily injuries, including a severely separated right shoulder.

B.   Defendant Kercher's Employment History

Prior to working for Rosslyn Farms, from 1997 to 1998, defendant Kercher worked for the City of Monessen Police Department ("Monessen"). While employed there, another officer sent a report to the Chief of Police regarding defendant Kercher's use of force with a run-away [doc. no. 111-7]. According to the report, defendant Kercher brandished his mace in the station and suggested he would use it against the run-away. Id.

Following his employment with Monessen, from 1998 to 2000, defendant Kercher worked for the Borough of Homestead Police Department ("Homestead"). Homestead terminated defendant Kercher's employment on September 26, 2000. The termination was based, in

part, on defendant Kercher's arrest of an individual on July 29, 2000 wherein defendant Kercher allegedly used excessive force. Specifically, Homestead found that defendant Kercher: (1) pointed his weapon at the arrestee unnecessarily, and (2) handcuffed the arrestee tightly for forty-five minutes [doc. 111-5 at 17].[2]

When defendant Kercher interviewed for the job with Rosslyn Farms, he advised the Chief of Police at the time, Tom Gillis, that he was terminated from Homestead, in part, for use of excessive force [doc. no. 108-3 at 119-120]. During the interview, defendant Kercher explained that he felt he had been "unjustly" terminated. Id. Defendant Kercher described his version of the Homestead incident to Tom Gillis. Id.

The municipal defendants did not review any paperwork relating to the Homestead termination when it decided to hire defendant Kercher. Defendant Kercher began working for Rosslyn Farms in 2003. There were no complaints of defendant Kercher using excessive force while working for Rossyln Farms until the April 14, 2007 incident with Ms. Hellmann.

C.   Plaintiffs' Lawsuit

On October 11, 2007, Ms. Hellmann and her husband filed this action. Plaintiffs allege the following causes of action against defendant Kercher: a section 1983 claim alleging that

---

[2]

Defendant Kercher disputed and continues to dispute the bases for the Homestead termination.

defendant Kercher used excessive force in violation of Ms. Hellmann's Fourth Amendment rights (Count I); a section 1983 claim alleging that defendant Kercher used excessive force in violation of Ms. Hellmann's Fourteenth Amendment substantive due process rights (Count II); intentional infliction of emotional distress (Count VIII); negligent infliction of emotional distress (Count IX); civil assault (Count X); civil battery (Count XI); false arrest (Count XIII); and false imprisonment (Count XIV).

Plaintiffs allege the following causes of action against the municipal defendants: a section 1983 claim alleging that the municipal defendants had a custom or policy of permitting their officers to use excessive force in violation of Ms. Hellmann's Fourth and Fourteenth Amendment rights (Count III); a section 1983 claim alleging that the municipal defendants had a custom or policy of failing to train their officers, thereby permitting them to use excessive force, in violation of Ms. Hellmann's Fourth and Fourteenth Amendment rights (Count IV); a section 1983 claim alleging that the municipal defendants had a custom or policy of failing to supervise their officers, thereby permitting them to use excessive force, in violation of Ms. Hellmann's Fourth and Fourteenth Amendment rights (Count V); a section 1983 claim alleging that the municipal defendants had a custom or policy of failing to screen defendant Kercher (Count VI); and respondeat

superior (Count XII).[3]

Plaintiffs allege the following causes of action against all defendants: violation of Ms. Hellmann's rights under Article I, Section 26 of the Pennsylvania Constitution (Count VII); negligence (Count XV); loss of consortium (Count XVI); and a request for permanent injunctive relief (Count XVII).

The parties have filed motions for summary judgment. Specifically, defendant Kercher has moved for partial summary judgment [doc no. 103]. The municipal defendants have moved for summary judgment as to all claims against them [doc. no. 108]. And, plaintiffs have moved for partial summary judgment against the municipal defendants [doc. no. 106]. We will address each motion in turn.

II. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The mere existence of some factual dispute between the

---

[3]

Defendant Larry Fischio is not included in Counts XII, XV, or XVI.

parties will not defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (internal quotation marks omitted). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248-49.

To demonstrate entitlement to summary judgment, defendants, as the moving parties, are not required to refute the essential elements of the plaintiff's cause of action. Defendants need only point out the absence or insufficiency of plaintiff's evidence offered in support of those essential elements. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once that burden has been met, plaintiff must identify affirmative evidence of record that supports each essential element of her cause of action. If plaintiff fails to provide such evidence, then she is not entitled to a trial, and defendants are entitled to summary judgment as a matter of law.

It is on this standard that the court has reviewed the three motions for summary judgment and the responses thereto.

III. DISCUSSION

    A.   <u>Defendant Kercher's Motion for Partial Summary Judgment</u>

        1.  <u>Violation of plaintiff's Fourteenth Amendment Substantive Due Process rights - Count II</u>

Plaintiffs assert two section 1983 claims against defendant Kercher based upon his alleged use of excessive force: one for violation of Ms. Hellmann's Fourth Amendment right to be free of unreasonable searches and seizures (Count I); the second for violation of her Fourteenth Amendment substantive due process rights (Count II) [doc. no. 68]. Defendant Kercher contends that the claim based upon Ms. Hellmann's Fourteenth Amendment rights, Count II, should be dismissed. We agree.

In order to recover in a section 1983 action, the plaintiff must prove two essential elements: (1) the defendant deprived her of a right secured by the Constitution or laws of the United States; and (2) the defendant deprived her of this federal right under color of any statute, ordinance, regulation, custom, or usage of any state or territory. <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 150 (1970). Section 1983 does not create substantive rights. It only allows plaintiffs to recover damages for violations of rights protected by other federal laws or by the United States Constitution. <u>Wilson v. Garcia</u>, 471 U.S. 261, 278 (1985).

As such, "the first step in any [section 1983] claim is to identify the specific constitutional right allegedly infringed."

Albright v. Oliver, 510 U.S. 266, 271 (1994) (citing Graham v.
Connor, 490 U.S. 386, 394 (1989)). "Where a particular Amendment
provides an explicit textual source of constitutional protection
against a particular sort of government behavior, that Amendment,
not the more generalized notion of substantive due process, must be
the guide for analyzing these claims." Id. at 273 (citing Graham,
490 U.S. at 395) (internal quotations omitted)).

Here, Ms. Hellmann claims defendant Kercher used
excessive force during her arrest [doc. no. 68 at ¶¶ 121-127]. The
Fourth Amendment provides:

> The right of the people to be secure in their
> persons, houses, papers, and effects, against
> unreasonable searches and seizures, shall not
> be violated, ... .

The U.S. Supreme Court has made clear that the Fourth Amendment
addresses "excessive force claims aris[ing] in the context of an
arrest or investigatory stop of a free citizen." Graham, 490 U.S.
at 394. In Graham, the Court held,

> Today we ... hold that *all* claims that law
> enforcement officers have used excessive force
> - deadly or not - in the course of an arrest,
> investigatory stop, or other "seizure" of a
> free citizen should be analyzed under the
> Fourth Amendment ... rather than under a
> "substantive due process" approach. Because
> the Fourth Amendment provides an explicit
> source of constitutional protection against
> this sort of physically intrusive governmental
> conduct, that Amendment, not the more
> generalized notion of "substantive due
> process," must be the guide for analyzing
> these claims.

Id. at 395 (emphasis in original).

Ms. Hellmann's section 1983 claims against defendant Kercher are, therefore, limited to the violation of her Fourth Amendment rights, and are properly addressed thereunder. See Fagan v. City of Vineland, 22 F.3d 1296, 1305 n.5 (3d Cir. 1994) (noting that since the Graham decision, "excessive force claims against the police are actionable under the Fourth Amendment rather than the substantive component of the Due Process Clause.") The section 1983 claim based upon Ms. Hellmann's Fourteenth Amendment substantive due process rights must, therefore, be dismissed. See Chatman v. City of Johnstown, Pa, No. 04-3639, 131 Fed.Appx. 18, 2005 WL 1127125 (3d Cir. May 13, 2005) (affirming the district court's dismissal of the plaintiff's Fourteenth Amendment claim where the plaintiff alleged that a police officer used excessive force during an arrest).

2. Violation of plaintiff's rights under the Pennsylvania Constitution - Count VII

Count VII of plaintiffs' complaint is based upon the defendants' alleged violation of Ms. Hellmann's equal protection rights as protected by Article I, Section 26 of the Constitution of the Commonwealth of Pennsylvania. Defendant Kercher contends that this claim must be dismissed because there is no private cause of action under the Pennsylvania Constitution for an award of monetary damages. The municipal defendants also move to dismiss Count VII on this basis.

10

The Supreme Court of Pennsylvania has not yet ruled on the issue of whether the Pennsylvania Constitution provides a cause of action for damages. Indeed, we have located no Pennsylvania case which implies a private right of action for damages for state constitutional violations. We have, however, located opinions from the Commonwealth Court of Pennsylvania, as well as our sister courts, explicitly holding that no such right exists under the Pennsylvania Constitution. See R.H.S. v. Allegheny County Dept. of Human Servs., Office of Mental Health, 936 A.2d 1218, 1225-226 (Pa. Commw. Ct. 2007) appeal denied, 954 A.2d 579 (2008)("neither statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution") (quoting Jones v. City of Phila., 890 A.2d 1188 (Pa. Commw. Ct. 2006), appeal denied, 909 A.2d 1291 (2006)); Underwood v. Beaver County Children And Youth Servs., No. 03-1475, 2007 WL 3034069, *2 (W.D. Pa. Oct. 7, 2007) (citing multiple cases in accord); Ryan v. Gen. Machine Prods., 277 F.Supp.2d 585, 595 (E.D. Pa. 2003). Accordingly, we find that plaintiffs' claim for damages based upon the Pennsylvania Constitution fails.

Plaintiffs, however, seek equitable relief as well as monetary damages in Count VII. Declaratory and injunctive relief are available remedies under the Pennsylvania Constitution. See Benkoski v. Wasilewski, No. 07-0197, 2007 WL 2670265, *13 (M.D. Pa. Sept. 7, 2007) (citing Jones, 890 A.2d at 1216). We will,

11

therefore, consider the merits of plaintiffs' Pennsylvania Constitution equal protection claim.

The analysis of plaintiffs' equal protection claim made pursuant to Article I, Section 26 of the Pennsylvania Constitution is the same as the analysis governing claims made pursuant to the Fourteenth Amendment of the United States Constitution. See Kramer v. Workers' Comp. Appeal Board, 883 A.2d 518, 532 (Pa. 2005). The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." This provision embodies the general rule that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985).

In order to sustain a section 1983 claim for the violation of Ms. Hellmann's Fourteenth Amendment equal protection rights, plaintiffs must prove she was treated differently than similarly situated individuals and that such disparate treatment was the result of purposeful discrimination. See Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992). Plaintiffs, apparently, claim that Ms. Hellmann was discriminated against for exercising her First Amendment right to inquire into the reason for her arrest [doc. no. 122 at 57]. There is no evidence, however, that Ms. Hellman was treated differently than similarly situated individuals or that such treatment was the result of purposeful discrimination.

Accordingly, plaintiffs' Pennsylvania Constitution claim fails entirely.

### 3. Negligence claims - Counts IX and XV

Plaintiffs have asserted two claims of negligence against defendant Kercher, negligent infliction of emotional distress (Count IX) and general negligence (Count XV) [doc. no. 68].[4] Defendant Kercher contends that he is immune from both claims pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("Tort Claims Act"), 42 Pa. Cons. Stat. Ann. § 8541, et seq. We agree.

The Tort Claims Act grants local agencies and their employees immunity for civil damages on account of any injury to a person or property. 42 Pa. Cons. Stat. Ann. §§ 8541, 8545. The Act lists eight exceptions to governmental immunity which may impose liability: (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody or control of animals. 42 Pa. Cons. Stat. Ann. § 8542. The parties agree, as do we, that none of these exceptions to immunity apply here.

Plaintiffs, who have sued defendant Kercher in both his

---

[4]

Plaintiffs assert their negligence claim (Count XV) against the municipal defendants as well. Plaintiffs, however, have not responded to the municipal defendants' argument that the negligence claim should be dismissed [doc no. 122]. For the reasons stated here, the negligence claim will be dismissed with prejudice.

individual and official capacities, contend that the Act only provides immunity to defendant Kercher in his official capacity. Therefore, according to plaintiffs, he can still be liable for acts performed in his individual capacity. The Court of Appeals for the Third Circuit, however, has held otherwise. Sameric Corp. of Delaware, Inc. v. City of Phila., 142 F.3d 582 (3d Cir. 1998).

In Sameric, a theater owner filed suit against members of the Philadelphia Historical Commission individually and in their official capacities. The court held that the individual defendants were immune from liability for state law claims pursuant the Tort Claims Act, except for conduct amounting to actual fraud, crime, actual malice or willful misconduct. Sameric, 142 F.3d at 600 (citing 42 Pa. Cons. Stat. Ann. §§ 8545, 8550). The court made no distinction between the defendants' individual and official capacities.

Accordingly, defendant Kercher is immune from liability for state law claims pursuant the Tort Claims Act, except for conduct amounting to actual fraud, crime, actual malice or willful misconduct. The negligence claims against him (Counts IX and XV) will, therefore, be dismissed with prejudice.

4. **False arrest and false imprisonment claims - Counts XIII and XIV**

Counts XIII and XIV are claims for false arrest and false imprisonment, respectively. Defendant Kercher contends that these claims fail because, as a matter of law, he had probable cause to

14

arrest Ms. Hellmann. We agree that both claims fail if probable cause existed. See Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994). We do not find, however, that probable cause to arrest Ms. Hellmann existed as a matter of law.

Probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the suspect had committed or was committing the offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (citation omitted); see also Renk, 641 A.2d at 293 (holding that probable cause exists when the facts and circumstances "are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime.") (citation and internal quotations omitted).

Material issues of fact exist as to whether defendant Kercher had probable cause to arrest Ms. Hellmann. Indeed, the parties dispute whether Ms. Hellmann stopped at the stop sign, whether she smelled of alcohol, exhibited slurred speech and glazed eyes, and whether Ms. Hellmann was cooperative or combative during the stop [doc. nos. 105, 119 at ¶¶ 8, 10, 21,22]. Based upon these disputed facts, the court cannot rule that probable cause existed as a matter of law. Defendant Kercher's motion as to plaintiffs' claims of false arrest (Count XIII) and false imprisonment (Count XIV) will, therefore, be denied.

5. <u>Demand for injunctive relief - Count XVII</u>

Plaintiffs seek injunctive relief against all defendants. In order to obtain such relief, plaintiffs must meet the dual requirements of showing: (1) that it is likely that Ms. Hellmann will be stopped or arrested by defendant Kercher; and (2) that it is likely that she again will be subjected to excessive force by defendant Kercher. <u>See</u> <u>Travelers Social Club v. City of Pittsburgh</u>, 685 F.Supp. 929, 932 (W.D. Pa. 1988).

The difficulty for a plaintiff to meet these requirements based upon a single incident is illustrated in <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95 (1983). There, the plaintiff filed suit after he was stopped for a traffic violation by police who, without provocation or justification, allegedly put him a chokehold rendering him unconscious. <u>Lyons</u>, 461 U.S. at 97-98. The plaintiff sought damages as well as an injunction barring the use of chokeholds by police when not threatened with deadly force. <u>Id</u>. Finding that the plaintiff had failed to make the necessary showing that he was likely to suffer future injury from the use of chokeholds by police officers, the Court held:

> That Lyons may have been illegally choked by the police on October 6, 1976, ... , does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer who would illegally choke him into unconsciousness without any provocation or resistence on his part.

<u>Id</u>. at 105-06.

16

As with the claimant in <u>Lyons</u>, Ms. Hellmann cannot show it is likely that she will again be stopped or arrested by defendant Kercher and that she again will be subjected to excessive force. That defendant Kercher allegedly used excessive force against Ms. Hellmann during a traffic stop on April 14, 2007, does not establish a real and immediate threat that she will again be stopped by him and that he would again use excessive force against her. <u>See</u> <u>Lyons</u>, 461 U.S. at 105. Accordingly, the facts in this case do not entitle plaintiffs to injunctive relief. Count XVII will be dismissed with prejudice.[5]

Accordingly, defendant Kercher's motion for partial summary judgment will be granted as to the following claims: the section 1983 claim based upon the plaintiff's Fourteenth Amendment substantive due process rights (Count II); the Pennsylvania Constitution claim (Count VII); negligent infliction of emotional distress (Count IX); negligence (Count XV); and plaintiffs' claim for injunctive relief (Count XVII). The motion will be denied as to the following claims: false arrest (Count XIII); and false imprisonment (Count XIV).

---

[5]

The municipal defendants have also moved to dismiss plaintiffs' claim for injunctive relief. For the reasons stated here, the claim will be dismissed as to all defendants.

17

B.  <u>The Municipal Defendants' Motion For Summary Judgment</u>[6]

The municipal defendants have filed an omnibus motion for summary judgment seeking the dismissal of all claims against them. We will address each claim in turn.[7]

1.   <u>Section 1983 claims - Counts III, IV, V and VI</u>

A municipality can be held liable under section 1983 when a plaintiff demonstrates that the municipality itself, through the implementation of a policy or custom, causes a constitutional violation.  <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 691-95 (1978).  Policy is made when a decision maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict.  <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 850 (3d Cir. 1990) (citing <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1480 (3d Cir.

---

[6]

We note that plaintiffs have sued the Rosslyn Farms Police Department and Larry Fischio in his official capacity as Chief of Police of the Rosslyn Farms Police Department.  However, the police department is not a legal entity separate from the Borough and is not subject to suit.  <u>See</u> <u>Benard v. Washington County</u>, 465 F.Supp.2d 461, 470 (W.D. Pa. 2006).  With regard to Larry Fischio, a claim against a municipal officer in his official capacity is a claim against the municipal entity the officer represents.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985).  As such, the only proper municipal defendant in this case is the Borough of Rosslyn Farms.

[7]

The following claims against the municipal defendants will not be discussed below as they were also asserted against defendant Kercher and have been addressed above: negligence (Count XV); the Pennsylvania Constitution claim (Count VII); and plaintiffs' claim for injunctive relief (Count XVII).

18

1990)).

A municipal custom, on the other hand, need not be formally approved by the municipality's decision-makers. <u>Monell</u>, 436 U.S. at 690-91. A municipal custom exists when, though not authorized by law, the practices at issue by state officials "are so permanent and well-settled as to virtually constitute law." <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 971 (3d Cir. 1996) (citing <u>Andrews</u>, 895 F.2d at 1480). A plaintiff can establish a municipal custom by showing that the municipality was aware of similar misconduct in the past, but failed to take precautions against future violations. <u>Bielevicz</u>, 915 F.2d at 851.

To be clear, a municipality cannot be held liable solely because it employs an employee who has violated another's constitutional rights. <u>Monell</u>, 436 U.S. at 691-92. Rather, the municipality can only be held liable where it, under color of some official policy or custom, <u>causes</u> the employee to violate another's constitutional rights. <u>Id</u>. Accordingly, in order to hold a municipality liable under section 1983, a plaintiff must prove (1) the existence of an unconstitutional custom or policy, and (2) that the policy or custom at issue was the proximate cause of the injuries suffered. <u>Bielevicz</u>, 915 F.2d at 850-51.

a. <u>Policy/custom of excessive force - Count III</u>

In order to show that a municipality had a custom of permitting its officers to use excessive force, the plaintiff must

19

present evidence that the municipal defendants knew about and acquiesced in a custom of tolerating the use of excessive force by its police officers. See Beck, 89 F.3d at 976.

There is no evidence of any previous allegation of defendant Kercher using excessive force while working for Rosslyn Farms. In fact, there is no evidence of any previous allegation of excessive force by any Rosslyn Farms police officer. Consequently, there is no evidence from which a reasonable jury could infer that the municipal defendants tacitly permitted Rosslyn Farms police officers to use excessive force.

Plaintiffs apparently argue that the municipal defendants are liable under section 1983 because their policies and procedures to prevent the use of excessive force by police officers are inadequate [doc. no. 122 at 21, 24]. The issue, however, is not whether the policies and procedures are adequate. The issue is whether the municipal defendants "were aware of similar misconduct in the past, but failed to take precautions against future violations." Beck, 89 F.3d at 972.

Defendant Kercher's description of the Homestead incident to Chief Gillis is not evidence that the municipal defendants "were aware of similar misconduct" by defendant Kercher. Rather, the municipal defendants were only aware of "unjustified" allegations of excessive force. We, therefore, find that the Homestead incident which preceded defendant Kercher's employment with Rosslyn

Farms is insufficient as a matter of law to create a question of fact as to whether Rosslyn Farms had a policy of permitting the use of excessive force in making arrests. Plaintiffs' section 1983 claim against the municipal defendants, based upon an alleged custom of permitting its officers to use excessive force, will, therefore, be dismissed.

### b. Policy/custom of failure to train - Count IV

There are limited circumstances in which an allegation of "failure to train" can be the basis for municipal liability under section 1983. City of Canton v. Harris, 489 U.S. 378, 387 (1989). "[I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388. In City of Canton, the United States Supreme Court rejected "recklessness" and "gross negligence" as the standard for failure to train liability and articulated the deliberate indifference standard as follows:

> [I]n light of the duties assigned to specific officers or employees **the need for more or different training is so obvious**, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

Id. at 390 (emphasis added).

In Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir.

21

1997) the Court of Appeals for the Third Circuit held that "deficient training may form a basis for municipal liability under section 1983 only if both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate are present." Bonenberger, 132 F.3d at 25 (citations and internal quotations omitted); see also Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998).

No such evidence exists here. There is no evidence that the municipal defendants had contemporaneous knowledge of the incident between defendant Kercher and Ms. Hellmann. There is no evidence that the municipal defendants had knowledge of a prior pattern of use of excessive force by defendant Kercher or any other Rosslyn Farms police officer. And, there is no evidence that defendant Kercher's supervisors acted in any way that could have communicated an approval of the use of excessive force.

Moreover, because there is no evidence that the municipal defendants had knowledge of a prior pattern of use of excessive force, "the need for more or different training" regarding the use of force could not have been "obvious" to the municipal defendants. See City of Canton.

Plaintiffs allege that defendant Kercher had a history of using excessive force and that Rosslyn Farms had received at least

two complaints concerning defendant Kercher's conduct during arrests. Therefore, according to plaintiffs, the municipal defendants' failure to train defendant Kercher regarding the use of force demonstrates a deliberate indifference to plaintiff's constitutional rights [doc. no. 107 at 34-35]. A review of the record, however, shows that the two complaints lodged with Rosslyn Farms regarding defendant Kercher did not involve allegations of excessive force [doc. no. 97-6].

Plaintiffs also suggest that the municipal defendants are liable because they have produced a dearth of evidence with respect to their training of defendant Kercher. However, whether defendant Kercher's training was satisfactory is not the issue. See City of Canton, 489 U.S. at 390-91 ("[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city. ... Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, ... .")

The evidence establishes that defendant Kercher had no history of using excessive force while working for Rosslyn Farms. The municipal defendants' only knowledge of any allegation of defendant Kercher using excessive force is the Homestead incident as described by defendant Kercher. As such, the municipal defendants were, at best, aware of "unjustified" allegations of excessive force. Consequently, there is no evidence that the

municipal defendants were aware of a prior pattern of use of excessive force by defendant Kercher.

Accordingly, plaintiffs have failed to establish the municipal defendants' deliberate indifference as required to set forth a failure to train claim under section 1983.

  c. <u>Policy/custom of failure to supervise - Count V</u>

In <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir. 1989), the Court of Appeals for the Third Circuit identified the elements of a supervisory liability claim. Initially, the plaintiff must identify the specific supervisory practice or procedure that the supervisor failed to employ. <u>Sample</u>, 885 F.2d at 1118. The plaintiff must then show: (1) that the existing custom and practice, without the identified supervisory practice, created an unreasonable risk of the ultimate injury, (2) that the supervisor was aware that this unreasonable risk existed, (3) that the supervisor was indifferent to the risk; and (4) that the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. <u>Id</u>; <u>see</u> <u>also</u> <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 216 (3d Cir. 2001).

The court in <u>Sample</u> explained that in order to prove that an "unreasonable risk" existed, the plaintiff must come forward with evidence that the harm in question had occurred on numerous, previous occasions:

> Normally, an unreasonable risk in a supervisory liability case will be shown by

24

> evidence that such harm has in fact occurred
> **on numerous occasions**. Similarly, deliberate
> indifference to a known risk will ordinarily
> be demonstrated by evidence that the
> supervisory official failed to respond
> appropriately in the face of an awareness of
> such injuries.

<u>Sample</u>, 885 F.2d at 1118 (emphasis added). Here, the harm in question is the use of excessive force by defendant Kercher. As discussed above, there is no evidence of a prior pattern of use of excessive force by defendant Kercher or any other member of the Rosslyn Farms police department. Consequently, there is no evidence that the municipal defendants were aware that an unreasonable risk existed. Plaintiffs's failure to supervise claim, therefore, fails as a matter of law.

      d. <u>Policy/custom of inadequate screening - Count VI</u>

As with the failure to train and failure to supervise claims against the municipal defendants, "rigorous standards of culpability and causation" apply to plaintiffs' inadequate screening claim. <u>Bd. of County Comm'rs. of Bryan County v. Brown</u>, 520 U.S. 397, 405 (1997). In fact, the United States Supreme Court has instructed that courts must be particularly careful to apply such rigorous standards in inadequate screening cases:

> Where a plaintiff presents a § 1983 claim
> premised upon the inadequacy of an official's
> review of a prospective applicant's record,
> however, there is a particular danger that the
> municipality will be held liable for an injury
> not directly caused by a deliberate action
> attributable to the municipality itself.
> Every injury suffered at the hands of a

municipal employee can be traced to a hiring decision in a "but for" sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury. To prevent municipal liability for a hiring decision from collapsing into <u>respondeat superior</u> liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.

<u>Brown</u>, 520 U.S. at 410.

To establish deliberate indifference in this case, plaintiffs must prove that adequate scrutiny of defendant Kercher's background would lead a reasonable policymaker to conclude that defendant Kercher's use of excessive force would be the "plainly obvious consequence" of the decision to hire him. <u>See</u> <u>id</u>. at 411.

Defendant Kercher's background included two incidents involving allegations of excessive use of force: (1) the mace brandishing incident in the Monessen station house, and (2) the July 29, 2000 Homestead arrest. These two incidents, only one of which involved an arrest, are not sufficient evidence upon which a jury could base a finding that defendant Kercher's use of excessive force was a "plainly obvious consequence" of the decision to hire him. <u>Id</u>. at 412-13. A jury could not reasonably find that, based on these two incidents, defendant Kercher was "highly likely" to use excessive force. <u>See</u> <u>id</u>. Accordingly, plaintiffs' failure to screen claim will be dismissed.

2.   <u>Respondeat superior - Count XII</u>

Count XII of plaintiffs' complaint alleges <u>respondeat</u> <u>superior</u> liability against the municipal defendants. The municipal defendants contend that the United States Supreme Court has consistently refused to hold municipalities liable under a theory of <u>respondeat</u> <u>superior</u> for the tortious acts of their employees.[8] <u>See</u> <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 818 (1985); <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 478-79 (1986). We agree that the municipal defendants cannot be held liable under a theory of <u>respondeat</u> <u>superior</u> for the tortious acts of defendant Kercher. <u>See</u> <u>Monell</u>, 436 U.S. at 691 ("a municipality cannot be held liable solely because it employs a tortfeasor"). Plaintiffs' <u>respondeat</u> <u>superior</u> claim will, therefore, be dismissed with prejudice.

### 3.  Loss of consortium claim - Count XVI

Plaintiffs have alleged a loss of consortium claim on behalf of Mr. Hellmann against all defendants. "[A] consortium claim is grounded on the loss of a spouse's services after injury." <u>Burns v. Pepsi-Cola Metropolitan Bottling Co.</u>, 510 A.2d 810, 812 (Pa. Super. Ct. 1986). Because a loss of consortium claim is a derivative claim, it is dependent upon the viability of the other claims. <u>See</u> <u>Kryeski v. Schott Glass Technologies</u>, 626 A.2d 595, 602 (Pa.Super.Ct. 1993). There are no remaining, viable claims against the municipal defendants. Plaintiffs' loss of consortium

---

[8] Plaintiffs have not responded to this argument in their opposing brief [doc. no 122]. The municipal defendants' motion as to this claim is, therefore, deemed unopposed.

claim against the municipal defendants must, therefore, be dismissed.

### C.   Plaintiffs' Motion For Partial Summary Judgment

Plaintiffs move for summary judgment as to the section 1983 claims against the municipal defendants, Counts III, IV, V, and VI [doc. no. 106].  We have determined, however, that the municipal defendants are entitled to judgment with respect to these claims.  Plaintiffs' motion will, therefore, be denied.

An appropriate order follows.

PAMELA HELLMANN and DAN     )
HELLMANN,                   )
    Plaintiffs,           )
                            )
    v.                    )    Civil Action No. 07-1373
                            )
SCOTT KERCHER, individually )
and in his official capacity )
as a Law Enforcement Officer )
ROSSLYN FARMS BOROUGH, LARRY )
FISCHIO, in his official    )
capacity as Chief of Police )
of the ROSSLYN FARMS POLICE )
DEPARTMENT, the ROSSLYN FARMS )
POLICE DEPARTMENT, and the  )
BOROUGH OF ROSSLYN FARMS,   )
    Defendants.           )

ORDER

AND NOW, this 6th day of March, 2009, IT IS HEREBY ORDERED

that defendant SCOTT KERCHER'S motion for partial summary judgment

[doc. no. 103] is GRANTED in part and DENIED in part.  The motion

is denied as to plaintiffs' false arrest (Count XIII) and false

imprisonment (Count XIV) claims.  The motion is granted as to the

following claims which are DISMISSED WITH PREJUDICE: the section

1983 claim based upon the plaintiff's Fourteenth Amendment

substantive due process rights (Count II); the Pennsylvania

Constitution claim (Count VII); the negligent infliction of

emotional distress claim (Count IX); the negligence claim (Count

XV); and the claim for injunctive relief (Count XVII).

IT IS FURTHER ORDERED THAT the motion for summary

judgment filed on behalf of defendants LARRY FISCHIO, the ROSSLYN

FARMS POLICE DEPARTMENT, and the BOROUGH OF ROSSLYN FARMS [doc. no. 108] is GRANTED. The following claims are DISMISSED WITH PREJUDICE: the section 1983 claim alleging that the municipal defendants had a custom or policy of permitting their officers to use excessive force in violation of Ms. Hellmann's Fourth and Fourteenth Amendment rights (Count III); the section 1983 claim alleging that the municipal defendants had a custom or policy of failing to train their officers in violation of Ms. Hellmann's Fourth and Fourteenth Amendment rights (Count IV); the section 1983 claim alleging that the municipal defendants had a custom or policy of failing to supervise their officers in violation of Ms. Hellmann's Fourth and Fourteenth Amendment rights (Count V); the section 1983 claim alleging that the municipal defendants had a custom or policy of failing to screen defendant Kercher (Count VI); and the respondeat superior claim (Count XII).

IT IS FURTHER ORDERED THAT plaintiffs' motion for partial summary judgment [doc. no. 106] is DENIED.

BY THE COURT:

Gary L. Lancaster
United States District Judge

cc:  All counsel of record

2